**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| **Kielande Destin,** | Case Number: |
| *Plaintiff,* | |
| v. | Ad Damnum: **$9,000 + Fees & Costs** |
| **Source Receivables Management, LLC, AND Experian Information Solutions, Inc.,** | |
| *Defendants.* | **JURY TRIAL DEMANDED** |

**COMPLAINT AND JURY TRIAL DEMAND**

COMES NOW the Plaintiff, **Kielande Destin** ("**Ms. Destin**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, **Source Receivables Management, LLC** ("**Source Receivables**"), and **Experian Information Solutions, Inc.** ("**Experian**") (jointly, the "**Defendants**"), stating as follows:

**PRELIMINARY STATEMENT**

1.      This is an action brought by Ms. Destin against the Defendants for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**"), and against Source Receivables for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**").

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, the FDCPA, 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331.

3.      The Defendants are subject to the provisions of the FCRA and/or the FDCPA, and to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Section 48.193, Florida Statutes.

4.      Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. §1391(b)(2), because the events giving rise to this cause of action occurred within this District.

## PARTIES

### Ms. Destin

5.      **Ms. Destin** is a natural person residing in Lakeland, Polk County, Florida, and a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c), and the FDCPA, 15 U.S.C. § 1692a(3).

### Experian

6.      **Experian** is an Ohio corporation with a primary business address of **475 Anton Blvd., Costa Mesa, CA 92626.**

7.      Experian is registered to conduct business in the State of Florida, where its registered agent is **CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.**

8.      Experian is a *Consumer Credit Reporting Agency* ("**CRA**") within the meaning of 15 U.S.C. § 1681a(f), in that, for monetary fees, it regularly engages in the practice of assembling or evaluating consumer credit information on consumers for the purpose of furnishing consumer reports to third parties, while using means of interstate commerce, specifically the U.S. mail and internet, for the purpose of preparing or furnishing consumer reports.

9.      As a CRA, Experian is aware of its obligations under the FCRA.

### Source Receivables

10.     Source Receivables is a North Carolina limited liability company with a primary business address of **4615 Dundas Drive, Suite 102, Greensboro, NC 27407.**

11.     Source Receivables is registered to conduct business in the State of Florida, where its registered agent is **CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.**

12.     Source Receivables is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), in that it uses an instrumentality of commerce, including postal mail and the internet, interstate and within the State of Florida, for its business, the principal purpose of which is the collection of debts, and/or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

13.     Source Receivables is licensed as a *Consumer Collection Agency* ("**CCA**") by the Florida Office of Financial Regulation.

14.     As a licensed CCA, Source Receivables knows, or should know, the requirements of the FDCPA.

## FACTUAL ALLEGATIONS

### The Debt

15.     Sometime prior to November 2020, Ms. Destin allegedly incurred a debt (the "**Debt**") to Sprint Corporation ("**Sprint**") for personal cellular phone services.

16.     The alleged Debt arose from services which were for family, personal, or household purposes, and therefore meets the definitions of *Debt* under the FDCPA, 15 U.S.C. §1692a(5).

17.     Around November 2020, Sprint assigned, or otherwise transferred the Debt to Receivables Performance Management, LLC ("**Receivables Performance**"), a Washington-based debt collector.

18.     In January 2021, Receivables Performance began reporting the Debt, monthly, to the major CRAs, including, Experian.

### Ms. Destin's Dispute of the Debt

19.     On or around May 3, 2021, Ms. Destin requested and obtained a copy of her consumer credit disclosure from Experian. **SEE PLAINTIFF'S EXHIBIT A.**

20.     Ms. Destin saw the Receivables Performance tradeline reporting to her credit, and on that day, she disputed Receivables Performance's report of the account.

21.     Experian, upon receipt of Ms. Destin's dispute, sent Receivables Performance an *Automated Consumer Dispute Verification* Request ("**ACDV**") form through an online platform known as e-OSCAR and asked Receivables Performance to make a reasonable investigation into the dispute.

22.     Receivables Performance thus knew that Ms. Destin disputed the Debt, at least as early as May 3, 2021.

23.     Receivables Performance responded to the ACDV, stating that the accuracy of the reported information ***could not be*** verified and thus requested that Experian delete its tradeline.

24.     Experian sent Ms. Destin results of its dispute investigation on or around May 24, 2021, affirming the disputed information concerning the purported Debt had been deleted. **SEE PLAINTIFF'S EXHIBIT B.**

25.     A debt collector who becomes aware that a debt is disputed is required to include notice of dispute in all subsequent communications in connection with the collection of that debt. *See* 15 U.S.C. § 1692e(8).

### Disputed, Deleted Debt Re-Reported by Source Receivables

26.     On information and belief, Receivables Performance thereafter returned the Debt to Sprint, noting that Ms. Destin disputed the account.

27.     In May 2021, Sprint assigned the Debt to another debt collector – Source Receivables.

28.     On information and belief, Sprint informed Source Receivables of Ms. Destin's existing dispute.

29.     In July 2021, Source Receivables began reporting the Debt to Experian. **SEE PLAINTIFF'S EXHIBIT C.**

30.     Source Receivables reported the same balance, account status, date of first delinquency, original creditor, and ECOA code as Receivables Performance had reported.

31.     Notable differences in the reported data included the purported "Date opened," the "Date of status" (*i.e.,* the date of the account being considered "in collection"), and when the Debt was "First reported." ***Id.***

32.     Despite the fact that Experian had just removed the ***identical*** information from Ms. Destin's credit file less than two months prior, Experian accepted the report from Source Receivables without question and re-inserted the derogatory information into Ms. Destin's credit file.

33.     Source Receivables also failed to indicate that the Debt was disputed in its report to Experian concerning the Debt. ***Id.***

34.     Thus, the Source Receivables tradeline appeared on Ms. Destin's credit report as a "non-disputed" debt.

35.     Source Receivables is a large debt collector and receives a considerable number of disputes concerning debts it reports to CRAs. Source Receivables knew, when it received a portfolio of charged-off debts for collection from Sprint in May 2021, which included Ms. Destin's purported Debt, that it was not the first collection agency to be assigned the account, and that other debt collectors had previously attempted to collect the Debt.

36.     Source Receivables thus knew—or reasonably should have known – a considerable number of the accounts it received from Sprint had been previously disputed and had to be reported as such.

37.     On information and belief, Source Receivables has no policies in place to ask creditors, like Sprint, who place debts for collection with it, whether the creditor was aware of any prior disputes by the relevant consumers.

38.     Assuming, *arguendo*, that Sprint failed to disclose to Source Receivables that the Debt was disputed, reliance on an original creditor's erroneous records is not a defense to an FDCPA action. *See Owen* v. *I.C. Sys., Inc.,* 629 F.3d 1263, 1270 (11th Cir. 2011) (holding that debt collectors remain liable even when violations are not knowing or intentional).

39.     Source Receivables' failure to disclose that the Debt was disputed materially damaged Ms. Destin's credit scores.

40.     The failure to properly report a disputed debt *as disputed* creates a concrete injury-in-fact because the failure to disclose this information affects credit

scores, meaning Ms. Destin suffered "a real risk of financial harm caused by an inaccurate credit rating." *Evans v. Portfolio Recovery Associates*, 889 F. 3d 337, 345 (7th Cir 2018).

### Source Receivables Reports False Data to CRAs

41.    Source Receivables' report to Experian indicated a "Date of status" of May 2021. **SEE PLAINTIFF'S EXHIBIT C.**

42.    The "Date of status" of a collection account indicates the date an account was first designated to be "in collection." *Cf. Baker v. Capital One Bank*, No. CV 04–1192 PHX–NVW, 2006 WL 2523440, at *4–*5 (D.Ariz. Aug. 29, 2006).

43.    Thus, Source Receivables' report falsely implies that the account was first referred for collection in May 2021, even though the true date was November 2020.

44.    The "Date of status" is a key point of data evaluated by many versions of FICO® credit scores, including FICO Model 2, used by Experian for mortgage evaluations. The more recent the "Date of status," the more adverse the information is factored against the consumer. *See Toliver v. Experian Info. Solutions, Inc.*, 973 F. Supp. 2d 707 (S.D. Tex. 2013).

45.    Further, "(a)reasonable jury could find that the 'Date of status' entry was "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Id.* (quoting *Sepulvado v. CSC Credit Services, Inc.*, 158 F.3d 890 (5th Cir. 1998)).

46.     Experian was aware from Receivables Performance's prior reporting that the May 2021 "Date of status" for the Debt was not accurate, as the Debt had been reported with a status of "in collection" at least since November 2020.

47.     Experian nonetheless accepted Source Receivables' reporting without question, re-incorporated the account into Ms. Destin's data file, and included the tradeline in reports sold concerning her.

48.     Source Receivables also reported to Experian that the account was "First reported" in July 2021, when it had been reported since at least January 2021, and likely earlier. **PLAINTIFF'S EXHIBIT C.**

## Source Receivables Reports False 'Date Opened"

49.     Source Receivables reported to Experian that the Sprint account had a "Date opened" of May 2021. ***Id.***

50.     Source Receivables' reported information is false. Ms. Destin opened an account with Sprint around 2018.

51.     Experian was aware that Source Receivables' reported information was false, since the account had been reported to Experian prior to the date it was now being reported as "opened."

52.     A reasonable and prudent reader of Ms. Destin's credit report would infer that an account indicating a balance owed to Sprint reflecting a "Date opened" of May 2021 means – as the plain language implies – the account was opened with Sprint in May 2021. *Toliver*, 973 F. Supp. 2d 707, 721 ("Here, there is

no language to indicate that 'Date opened' means anything other than the date that the consumer opened the account, as it does for the majority of accounts on (Plaintiff's) credit report…. (A) reasonable jury could find that the "Date opened" entry was misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.") (Internal quotations omitted).

53.     To the extent that Source Receivables may have been relying upon Metro 2 guidelines promulgated by the Consumer Data Industry Association when determining how to report the "Date opened," "Date of status" and date "First reported," such guidelines are voluntary and hold no authority of law. *See*, e.g., *Dash v. Midland Funding LLC*, Case No: 8:16-cv-2128-T-36AAS (M.D. Fla. Mar. 3, 2017) quoting *Mestayer v. Experian Info. Sols., Inc*, 15-CV-03645-EMC, 2016 WL 631980, at *4 (N.D. Cal. Feb. 17, 2016) ("[Plaintiff] has failed to point to any authority indicating that a failure to comply with an industry standard is a failure to comply with the law.")

54.     The FCRA requires anyone, including Source Receivables, to not furnish data to a CRA unless it is accurate and verifiable.

55.     Source Receivables knew, when making its report to Experian, that the Debt was not founded on an account "opened" in May 2021 and did not have a legitimate "Date of status" of May 2021.

56.     Had Source Receivables reported the account correctly, with a true "Date of status" and "Date opened, Experian and the other nationwide CRAs

would still have accepted the report and published it, albeit with accurate, instead of false, data.

57.     Indeed, one of the primary reasons creditors frequently rotate debts from agency-to-agency is to exploit this very "loophole" in the CRAs reporting system. Creditors like Sprint are fully aware that due to the recent proliferation of free credit-monitoring programs which advertise their services heavily (*e.g.*, CreditKarma.com), consumers are much more aware of their credit reports and scores than they were even five years ago.

58.     Thus, a creditor who assigns a debt for collection only once is placed at a significant disadvantage over a creditor who assigns the same debt for collection to agency after agency, since each new placement of the debt creates an opportunity for the agency to re-report the debt as "new" and cause a significant drop to a consumer's credit score.

59.     Sprint does not sue consumers for purported unpaid cell phone bills of the dollar amount claimed owed by Ms. Destin. Rather, it relies almost exclusively on hiring third-party agencies, like Receivables Performance and Source Receivables, who, in turn, utilize credit reporting as their <u>main</u> tool to collect these debts from consumers.

60.     If Sprint were to place the debt for collection a single time, it would be reported as "new" once, causing a single instance of a consumer being notified

by smartphone apps like CreditKarma.com that "new" negative history had hit their report, along with a corresponding credit score drop.

61.     But, since Sprint rotates debts from agency-to-agency frequently, it has multiple opportunities to have its agents report the account as "new" to the CRAs and create multiple alerts from smartphone apps like CreditKarma.com that ostensibly "new" negative history had been added to their report.

62.     This allows creditors like Sprint, along with their third-party contingency agencies, like Source Receivables, to collect a greater percentage of debts in any given debt portfolio.

63.     Indeed, a debt buyer who does not exploit this loophole almost certainly collects less of its investment back, since negative credit reporting is virtually the only leverage Sprint and its agents have over a consumer.

64.     Metro 2 Guidelines were developed more than 12 years ago, when rotation of debt from agency-to-agency was rare. The Metro 2 Guidelines did not contemplate the possibility that the same debt could be placed for collection *more than one time*.

65.     Source Receivables was fully aware when it made its reports to Experian and the other CRAs that the information it was reporting was not true. Source Receivables intentionally chose to report information in a false manner – and a manner in which it knew would cause unfair, unwarranted damage to Ms. Destin's credit scores.

66.     Indeed, Sprint's re-placement of the debt from Receivables Performance to Source Receivables was an intentional act and part of a broader general policy, calculated in large part to cause additional damage to the credit scores of consumers like Ms. Destin.

67.     Source Receivables was under no obligation to report the account as opened in 2021 with a 2021 date of status. Source Receivables knew that reporting information in this fashion required communication of information known to be false to third parties.

68.     Source Receivables did not risk violating the FDCPA by not following Metro 2 Guidelines. *See Dash.*

69.     Indeed, the debt collection industry has made this very argument in various federal courts on multiple occasions. *See Davenport v. Capio Partners*, Case No. 20-cv-01700 (M.D. Pa. 2021) (Debt collector's motion to dismiss consumer's FDCPA claim concerning debt collector's credit reporting violated Metro 2 Guidelines granted; court held that "industry standards for consumer data are not the law of the land.")

70.     Conversely, following Metro 2 Guidelines does not inoculate Source Receivables from liability under the FDCPA.

### Source Receivables Verifies Inaccurate Data as 'Accurate'

71.     In July 2021, upon being notified of a "new" collection reporting, Ms. Destin disputed the Source Receivables tradeline to Experian, stating the account

had been previously disputed and deleted and that the date of account opening was falsely reported.

72. Experian's dispute resolution systems are almost completely automated.

73. Experian's automated systems initiated an ACDV which was delivered to Source Receivables through e-OSCAR.

74. Source Receivables responded to the ACDV, certifying to Experian that its information was accurate and required no update, change, or modification, other than to update the account to reflect as "disputed."

75. If a data furnisher like Source Receivables decides to report disputed information as verified, "the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295 (11th Cir. 2016).

76. Zero evidence exists to support the conclusion that the Sprint account was opened in May 2021 – as is plainly obvious as it had been reported to Experian in January 2021. As such, Source Receivables could not have possibly obtained any evidence to support its reports being accurate.

77. Experian also failed to make a reasonable investigation into Ms. Destin's dispute.

78.     Upon receipt of the ACDV response, Experian utilized an automated system which made rudimentary checks of tradeline data between what Source Receivables had reported and the data contained in Experian's own file on Ms. Destin, *e.g.,* her name, address, date of birth, and Social Security number.

79.     Experian had ample evidence at its disposal which indicated the account had not been "First reported" in July 2021. *See Toliver*, 973 F. Supp. 2d at 731 ("the 'First reported' entry is meant to reflect the date that the creditor first reported the account to Experian. Experian should know this date.")

80.     Further, Experian knew, or should have known, that the account was not "opened" in May 2021 nor was the "Date of status" in May 2021.

81.     For at least the last 35 years, courts in this district have recognized that a CRA cannot rely upon its data furnisher exclusively, when the consumer disputes the accuracy of the furnisher's version of events and provides evidence to the contrary. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [data furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (M.D.Fla.1985).

## Experian's Failure to Maintain Reasonable Procedures

82.     Pursuant to 15 U.S.C. § 1681i(a)(5)(C), Experian was required to "maintain reasonable procedures designed to prevent the reappearance in a

consumer's file, and in consumer reports on the consumer, of information that is deleted...."

83.     Source Receivables reported information which had previously been deleted in response to a dispute from Ms. Destin, changing only the "Date opened," "Date of status," and the date "First reported," but leaving all other information unchanged.

84.     On information and belief, Experian's systems are programmed to consider information about an identically reported debt to be "different" so long as the debt collector reporting the debt is a different entity.

85.     However, the fact that a different debt collector is reporting a particular debt does nothing to change the underlying data being reported.

86.     Had Experian used reasonable procedures, its systems would have flagged the previously deleted data and blocked it from being reinserted.

87.     Additionally, on information and belief, Experian did not verify that the Receivables Performance tradeline which it had previously deleted could now be verified as accurate, contrary to the requirements of 15 U.S.C. § 1681i(a)(5)(B)(i).

88.     Even assuming, *arguendo*, that Experian had obtained the FCRA-mandated verification of accuracy to reinsert the Source Receivables tradeline into Ms. Destin's reports, it would still be inherently unreasonable to include information from a furnisher of data when that same information had been deleted

in response to an ACDV, indicating that the information *could not be* confirmed as accurate.

89.     Experian also failed to mail written notices to Ms. Destin stating that it was reinserting previously deleted information, disclosing the business name and address of the furnisher of information making such verification, and explaining to Ms. Destin that she has the right to add a statement disputing the accuracy of the supposed Debt.

90.     As a result of Experian's actions, disputed, unverifiable, previously deleted information was reinserted into Ms. Destin's credit reports, without the legally required notice of dispute.

91.     Experian also maintains no procedures to ensure accounts are reported with accurate "Date opened" and "Date of status" data.

92.     To the contrary, Experian encourages its furnishers of data to report information using Metro 2 Guidelines—guidelines Experian itself was involved in establishing, along with Equifax and Trans Union – even though these guidelines are woefully antiquated and result in reporting which is far from accurate.

93.     Experian has been sued in the past for reinserting previously deleted accounts without notice to the consumer and is thus aware that its procedures frequently result in the inclusion of previously deleted, disputed accounts, without verification or notice to the consumer.

94.     Experian's knowing and repeated conduct warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols., Inc.,* Case No.: 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages against Experian for its repeated, willful violations of the FCRA).

95.     As a result of the Defendants' actions, Ms. Destin has suffered lost financial opportunities, lower credit scores, significant emotional distress, and aggravation.

96.     Ms. Destin has hired the aforementioned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.

## COUNT I
## VIOLATIONS OF THE FCRA - *Experian*

97.     Ms. Destin adopts and incorporates paragraphs 1 – 96 as if fully stated herein.

98.     Experian violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy by including false and inaccurate information in Ms. Destin's credit reports, when it compiled and produced reports indicating Ms. Destin owed the Sprint account. The Debt had been disputed and deleted from Ms. Destin's credit file in August, only to be re-inserted without the legally required certification of accuracy and written notice to Ms. Destin. Experian had no basis to believe the information was accurate when reported by Source Receivables.

99.    Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation regarding the Source Receivables tradeline disputed by Ms. Destin. Experian blindly accepted information received from an automated ACDV response as accurate and made no further investigation on its own, despite Experian having more than sufficient data of its own (*e.g.*, the prior Receivables Performance report) to conclude the data reported by Source Receivables was not accurate and required modification or deletion.

100.    Experian violated **15 U.S.C. § 1681i(a)(5)(B)(i)** when it failed to obtain certification of accuracy of previously deleted information, specifically, the disputed Receivables Performance tradeline, and reinserted this information into Ms. Destin's credit files without verification via the Source Receivables tradeline.

101.    Experian violated **15 U.S.C. § 1681i(a)(5)(B)(ii)** when it failed to provide written notice that it was reinserting previously deleted information into Ms. Destin's credit file, when it reinserted the disputed Source Receivables tradeline without notice to Ms. Destin.

102.    Experian violated **15 U.S.C. § 1681i(a)(5)(B)(iii)(I)** when it failed to provide a written statement to Ms. Destin that it was reinserting previously deleted information into her credit file, when it re-inserted the disputed Source Receivables tradeline without notice to Ms. Destin.

103.   Experian violated **15 U.S.C. § 1681i(a)(5)(B)(iii)(II)** when it failed to provide the business name and address of the entity associated with the reinsertion of the previously deleted information.

104.   Experian violated **15 U.S.C. § 1681i(a)(5)(B)(iii)(III)** when it failed to provide written notice to Ms. Destin that she had the right to add a statement of dispute to her file regarding the reinserted tradeline.

105.   Experian's conduct was willful and intentional, or, alternately, was done with a reckless disregard for a consumer's rights under the FCRA to have reports produced with maximum possible accuracy and to prevent the reinsertion of previously deleted tradelines.

106.   Experian's policies could reasonably be foreseen to cause harm to Ms. Destin.

107.   Indeed, as a result of Experian's conduct, Ms. Destin suffered damage to her credit report and scores, as well as emotional distress in having to deal with an account which she thought had been deleted as a result of her dispute.

108.   As a result of its conduct, Experian is liable to Ms. Destin, pursuant to the FCRA, for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Ms. Destin respectfully requests this Honorable Court enter judgment against Experian for:

a.   The greater of statutory damages of **$1,000** per incident (for a total of **$7,000**), pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Ms. Destin's actual damages and related economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1);

b.   Punitive damages for Experian's willful and intentional acts;

c.   Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

d.   Such other relief that this Court deems just and proper

## COUNT II
## VIOLATIONS OF THE FCRA – *Source Receivables*

109.   Ms. Destin adopts and incorporates paragraphs 1 – 96 as if fully stated herein.

110.   Source Receivables violated **15 U.S.C. § 1681s-2(b)** when it failed to update, modify, or correct its reports after receiving notice of dispute from Experian. Any reasonable investigation would have concluded that the data reported about the purported Sprint debt could not be verified as accurate since it reflected a "Date opened" of May 2021 and a "Date of status" of May 2021, when this was clearly not true.

111.   Source Receivables' conduct was willful and intentional, or,

alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Ms. Destin.

112.  As a result of its conduct, Source Receivables is liable to Ms. Destin pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Ms. Destin respectfully requests that this Honorable Court enter judgment against Source Receivables for:

a.   The greater of statutory damages of **$1,000** per incident or Ms. Destin's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3); and,

c.   Such other relief that the Court deems just and proper.

### COUNT III
### VIOLATIONS OF THE FDCPA – *Source Receivables*

113.  Ms. Destin adopts and incorporates paragraphs 1 – 96 as if fully stated herein.

114.  Source Receivables violated **15 U.S.C. § 1692e and 1692e(10)** when Source Receivables made false and/or misleading representations in an attempt to collect the Debt, when it reported the Debt to Experian, claiming: (a) the "Date of status" of the Debt (*e.g.*, the date which the account became a collection) was

May 2021, when it was November 2020 or earlier; (b) the account had been "First reported" as of July 2021, when it had been reported since January 2021 or earlier; (c) the "Date opened" was May 2021, when the Sprint account was opened in 2018; and, (d) the Debt was not disputed, when it was disputed.

115.   Source Receivables violated **15 U.S.C. § 1692e(2)(a)** when Source Receivables made false and misleading representations about the character, amount and legal status of the Debt when it falsely claimed: (a) the "Date of status" of the Debt (*e.g.*, the date which the account became a collection) was May 2021, when it was November 2020 or earlier; (b) the account had been "First reported" as of July 2021, when it had been reported since January 2021 or earlier; (c) the "Date opened" was May 2021, when the Sprint account was opened in 2018; and, (d) the Debt was not disputed, when it was disputed.

116.   Source Receivables violated **15 U.S.C. § 1692e(8)** when Source Receivables communicated credit information known to be false, specifically, claiming: (a) the "Date of status" of the Debt (*e.g.*, the date which the account became a collection) was May 2021, when it was November 2020 or earlier; (b) the account had been "First reported" as of July 2021, when it had been reported since January 2021 or earlier; (c) the "Date opened" was May 2021, when the Sprint account was opened in 2018; and, (d) the Debt was not disputed, when it was disputed.

117.   Source Receivables violated **15 U.S.C. § 1692e(8)** when Source Receivables communicated credit information which was known to be disputed, or which should have been known to be disputed, without disclosure of dispute, in its report to Experian in July 2021.

118.   Source Receivables' actions render it liable for the above-stated violations of the FDCPA, and Ms. Destin is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

119.   Source Receivables' actions caused Ms. Destin to suffer damages to her credit report and scores, as well as emotional distress in having to deal with an account which she thought had been deleted as a result of her dispute.

**WHEREFORE,** Ms. Destin respectfully requests this Honorable Court enter judgment against Source Receivables for:

a.   Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. §1692k(a)(2)(A);

b.   Unspecified actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.   Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted this July 23, 2021, by:

**SERAPH LEGAL, P.A.**

/s/ *Brandon D. Morgan*
Brandon D. Morgan, Esq.
Florida Bar Number: 1015954
BMorgan@seraphlegal.com

/s/ *Thomas M. Bonan*
Thomas M. Bonan, Esq.
Florida Bar Number: 118103
TBonan@seraphlegal.com

1614 N 19th Street
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Attorneys for Plaintiff*

## **ATTACHED EXHIBIT LIST**

A.  Ms. Destin's Experian Consumer Disclosure, May 3, 2021 – Receivables Performance Tradeline, Excerpt
B.  Ms. Destin's Experian Dispute Results, May 24, 2021, Deletion of Receivables Performance Tradeline
C.  Ms. Destin's Experian Consumer Disclosure, July 14, 2021 – Source Receivables Tradeline, Excerpt